684 S.W.2d 320 (1985)
D.S., Appellant,
v.
F.A.H. and M.A.H., Appellees.
Court of Appeals of Kentucky.
February 8, 1985.
*321 Michael J. Denney, Cumberland Trace Legal Services, Inc., Campbellsville, for appellant.
Douglas E. Robertson, Bowling Green, for appellees.
Before COOPER, McDONALD and WHITE, JJ.
McDONALD, Judge:
In an adoption proceeding the trial court terminated the appellant/natural mother's parental rights and granted the paternal grandparents' petition for adoption. The natural mother appeals.
The appellant, D.S., gave birth out of wedlock to D.M.S. on April 18, 1980. T.F.H. is the recognized and undisputed natural father although he refused to sign the birth certificate.
D.S. moved around with D.M.S. for a year, living with parents and relatives, having periods of treatment for depression and emotional disorders in hospitals. D.S. requested help from the parents of her child's father, the grandparents and appellees herein. She asked if they would care for D.M.S. on a temporary basis so she could get straightened out. F.A.H. and M.A.H., the paternal grandparents, took possession of D.M.S. on April 19, 1981.
D.S. again became pregnant and gave birth to another illegitimate child but gave the child up for adoption. She also had two abortions performed prior to the birth of D.M.S. D.S. has abused drugs and once overdosed on drugs trying to commit suicide. She has had extensive psychiatric treatment and is presently in a Transitional Living Center. D.S. readily admits that she is unable to care for D.M.S. but she does not want her parental rights terminated. She has kept in contact with her child, loves her and hopes at some time in the future to be reunited with D.M.S., provided she is able to care for her.
The cruelest act a court could perform would be to order D.M.S. into the custody and possession of D.S. However, the custody of the child was never an issue below. In fact, D.S. offered to give the appellees permanent custody of D.M.S. which would preclude any possibility of the child being removed from the home of appellees on a permanent basis unless it was shown to be in her best interest. K.R.S. 403.340; Rose v. Ledford, 306 Ky. 662, 228 S.W.2d 957 (1948). At issue instead was D.S.'s parental rights. Although the appellees *322 have no standing to bring an action to terminate D.S.'s parental rights, K.R.S. 199.603(7), their petition to adopt D.M.S., if granted, would have the same legal effect. K.R.S. 199.520(2); K.R.S. 199.570(3); and Jouett v. Rhorer, Ky., 339 S.W.2d 865 (1970). Their entitlement to such relief must, however, be predicated on clear and convincing evidence that D.S. has either abandoned the child or "substantially or continuously or repeatedly neglected or abused" the child. K.R.S. 199.603(1)(a), (b); K.R.S. 199.500(4); and Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
The proof below was submitted in part by deposition and heard in part by the trial court. The putative natural father, T.F.H., submitted a sworn affidavit admitting paternity of D.M.S. and acknowledging his consent to the adoption. The trial court rendered lengthy findings of fact outlining D.S.'s indiscretions and history of mental problems. It concluded as follows:
The probability of her recovery after over three years of experiencing her illness is remote, improbable and when balanced against the best interest of the child the proof is clear and convincing that her parental rights should be terminated. [Emphasis added.]
It further concluded the child had been abandoned and substantially neglected. We believe the trial court erred as a matter of law in reaching these conclusions. In the recent case of O.S. v. C.F., Ky.App., 655 S.W.2d 32 (1983), this court held as follows:
In adoption proceedings parental rights are not severed merely because a child would have a better home elsewhere or because the natural parent may provide less parental care than the adopting parent. Nor are they severed because a parent has temporarily abdicated his parental responsibility in favor of a kindred, as appears to have been the situation in the case at hand. . . . Generally, abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child. Non-support does not itself constitute abandonment, especially where the child is supported by a volunteer, but it may be an element of abandonment. [Citations omitted.]
See also L.S.J. v. E.B., Ky.App., 672 S.W.2d 937 (1984), and Kantorowicz v. Reams, Ky., 332 S.W.2d 269 (1960), a similar adoption proceeding initiated by grandparents wherein the court held that, "Separation to constitute abandonment and neglect must be willful and harsh." Likewise, K.R.S. 199.011 defines an abused or neglected child as follows:
[A] child whose health or welfare is harmed or threatened with harm when his parent, guardian or other person who has the permanent or temporary care, custody or responsibility for the supervision of the child: inflicts or allows to be inflicted upon the child, physical or mental injury to the child by other than accidental means; creates or allows to be created a risk of physical or mental injury to the child by other than accidental means; commits or allows to be committed an act of sexual abuse upon the child; willfully abandons or exploits such child; does not provide the child with adequate care and supervision; food, clothing, and shelter; education; or medical care necessary for the child's wellbeing . . . . [Emphasis added.]
Considering the above cited authorities it is clear that the trial court's findings are insufficient to support either of its conclusions that D.S. abandoned or neglected her child. Her separation from D.M.S. is the result, as the court found, of her mental and emotional problems for which she has sought and continues to receive treatment. Likewise, failure to provide support has been due to her inability to work due to her mental problems. The situation that keeps her from being able to care for D.M.S. is no more self-imposed or deliberate than that of the natural mother in L.S.J. v. E.B., supra, who was incarcerated on a forgery charge. Thus it cannot be maintained, nor did the trial court find, that D.S.'s placement *323 of the child with the appellees shortly after the child's first birthday and her continued separation from her is in any respect willful. In fact, the record shows and the appellees concede that D.S. has by telephone communication and periodic visitation maintained contact with D.M.S.
The case of Santosky v. Kramer, supra, clearly sets forth the degree of protection the law affords parental rights. We believe the same procedural safeguards mandated therein should apply regardless of whether one is threatened with the loss of his or her parental rights pursuant to K.R.S. 199.603, the involuntary termination statute, or by adoption of his or her child without his consent. The result to the natural parent is the same in either proceeding, that is, total deprivation of any legal or personal connection with the child. For that matter, we believe it incumbent upon the court when considering a petition to adopt pursuant to K.R.S. 199.500(4) to not only require clear and convincing evidence of abandonment or neglect, but to also consider any less drastic measures to accomplish the child's best interest. See E. Chemerinsky, Defining the "Best Interests": Constitutional Protections in Involuntary Adoptions, 18 J.Fam.L. 108-13 (1979). We think it would be rare when a child's best interest would be served, in a battle between family members, by sustaining a petition for its adoption rather than awarding custody to the nonparent, if appropriate, and allowing for visitation between the parent and child. In the instant case the judgment does not reflect whether the trial court even considered this possibility.
The judgment of the Barren Circuit Court is hereby vacated.
All concur.