RENDERED: MARCH 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1346-ME

J.M.B., BIOLOGICAL FATHER                                          APPELLANT


APPEAL FROM HOPKINS CIRCUIT COURT
v.       HONORABLE SUSAN WESLEY MCCLURE, JUDGE
ACTION NO. 22-AD-00047


K.L.D., BIOLOGICAL MOTHER;
B.R.T.-D., A MINOR CHILD; AND
R.W.D.                                                             APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

JONES, A., JUDGE: J.M.B. ("Father") appeals the judgment of the Hopkins

Circuit Court which granted the petition for adoption of R.W.D. ("Step-Father")

and terminated Father's parental rights to B.R.T.-D., a minor child to Father and

K.L.D. ("Mother"). Father's counsel commenced the appeal on his behalf and has

filed a brief in compliance with *A.C. v. Cabinet for Health and Family Services*,

362 S.W.3d 361 (Ky. App. 2012) and *Anders v. California*, 386 U.S. 738 (1967). The *Anders* brief concedes that there are no meritorious or nonfrivolous issues that could be raised. Counsel also filed a motion to withdraw. Father filed a supplemental *pro se* brief as afforded under *A.C.*, 362 S.W.3d at 371. Step-Father filed a response brief. After a careful review of the record on appeal, the relevant law, and the briefs filed, we affirm the circuit court's judgment of July 5, 2023. Additionally, we have granted the motion of Father's counsel to withdraw by separate Order, as all requirements of *A.C.* and *Anders*, *supra*, have been met.

## I. BACKGROUND

Child was born on October 10, 2017. Mother and Father never married, though Father is listed on Child's birth certificate. Father was arrested in December 2017 and has been in and out of incarceration several times since then. Mother began living with Step-Father around the time Child was six-months old.

In late 2019, while Mother and Step-Father were taking a break from their relationship, Father stayed with Mother occasionally, though Father stated the longest consistent period of time was two weeks. (Video Record, ("V.R.") June 27, 2023 Hearing – 11:19:20.) In December 2019, Mother filed for a Domestic Violence Order ("DVO") of protection after an altercation occurred in which Father was intoxicated and belligerent in the presence of Child. In March 2020,

the Crittenden Circuit Court granted a DVO for a period of one year on behalf of Mother and Child against Father. (Record, ("R.") at 321.)

Sometime in August 2021, after the DVO had expired, Father contacted Mother via text to inquire about seeing Child. At that time Father was in a rehabilitative facility. Mother denied any visitation, expressing her concerns for Father to have finished rehabilitation and be sober for a longer period of time; however, she indicated a willingness to allow contact in the future if that occurred. (V.R. June 27, 2023 Hearing – 10:02:00.) This did not occur, as Father was arrested again in January 2022 and eventually convicted of trafficking in a controlled substance under KRS[1] 218A.1412.

Father has been incarcerated since then, and at the time of the final hearing in this matter, his sentence was set to finish in 2030 with a parole eligibility date of early 2024.[2] Father testified that, while incarcerated, he sent three letters to Mother inquiring about seeing Child; however, Mother stated she only received one, which was sent after the adoption proceedings commenced. (V.R. June 27, 2023 Hearing – 12:01:30.)

---

[1] Kentucky Revised Statutes.

[2] As indicated in the circuit court's order of May 24, 2024, Father's parole eligibility date was moved to June 2025.

Mother and Step-Father married in September 2021. Step-Father filed a petition for adoption on December 27, 2022. Father objected to the adoption and was appointed counsel. The Cabinet for Health and Family Services conducted an investigation pursuant to KRS 199.510 and filed its report in which it approved of the adoption on March 9, 2023. (R. at 34.) The Guardian *ad Litem* ("GAL") appointed for Child likewise filed a report in which he recommended the adoption occur. (R. at 47.) Mother filed an entry of appearance and waiver in agreement of the adoption on May 30, 2023.

The circuit court held a hearing on June 27, 2023; all parties attended and testified. At the end of the hearing, the circuit court made findings on the record, granted Step-Father's petition for adoption, and terminated Father's parental rights. It entered written findings of fact and conclusions of law and a judgment of adoption on July 6, 2023. (R. 360, 368.) This appeal followed.[3]

---

[3] Father filed a notice of appeal on September 29, 2023. This Court initially issued an order for Father to show cause as to why this appeal should not be dismissed as untimely. After further review of the record, the Court discovered that the circuit court had not yet ruled on Father's *pro se* motion filed on July 17, 2023, which requested post-judgment relief from the July 6, 2023 Judgment. The circuit court then denied Father's pending motion on May 24, 2024. While Father's notice of appeal was premature, it relates forward to the May 24, 2024 order. *See Johnson v. Smith*, 885 S.W.2d 944, 950 (Ky. 1994). Thus, the notice of appeal was timely filed. Kentucky Rules of Appellate Procedure ("RAP") 3(A)(3).

## II. STANDARD OF REVIEW

An adoption without the consent of a biological parent is tantamount to a proceeding which involuntarily terminates that parent's parental rights. *See Moore v. Asente*, 110 S.W.3d 336, 351 (Ky. 2003). Such judgments are reviewed under the clearly erroneous standard and must be based upon clear and convincing evidence. *See* CR[4] 52.01; *see also J.R.E. v. Cabinet for Health & Fam. Servs.*, 667 S.W.3d 589, 592 (Ky. App. 2023). Clear and convincing evidence exists when it is of a "probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Id.* (citing *Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934)). "Under [the clearly erroneous] standard, we are 'obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.'" *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 360 (Ky. 2022) (citations omitted.)

Furthermore, in matters to which *A.C.* and *Anders*, *supra*, are applicable, this Court "independently review[s] the record and ascertain[s] whether the appeal is, in fact, void of nonfrivolous grounds for reversal[,]" or in other words, whether there was a palpable error. *A.C.*, 362 S.W.3d at 370-72 (citing *Anders*, 386 U.S. at 744). "Fundamentally, a palpable error determination turns on

---

[4] Kentucky Rules of Civil Procedure.

whether the [C]ourt believes there is a substantial possibility that the result would have been different without the error." *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (internal quotation marks and citation omitted).

## III. ANALYSIS

As mentioned above, counsel's *Anders* brief asserts there are no nonfrivolous grounds for appeal. However, in his supplemental *pro se* brief, Father appears to contest the circuit court's findings relating to KRS 199.502(1), namely that there is not substantial evidence to support those findings.

Generally, a trial court must contemplate four distinct elements in a contested adoption proceeding:

> (1) [D]id the petitioner comply with the jurisdictional requirements for adoption; (2) have any of the conditions outlined in KRS 199.502(1) been established; (3) is the petitioner of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child as required by the first portion of KRS 199.520(1); and (4) finally, will the best interest of the child be promoted by the adoption, and is the child suitable for adoption as required by the final portion of KRS 199.520(1).

*A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021) (footnote omitted). Notably, there is no requirement for a finding that the child has been neglected or abused in a contested adoption proceeding. *Id.*; *compare* KRS 199.502 *with* KRS 625.090.

-6-

In the instant case, the circuit court explicitly made the required findings and weighed all the necessary considerations. (R. at 363-66.) Particularly, it found that Father abandoned Child for a period of not less than ninety (90) days under KRS 199.502(1)(a).[5] "[A]bandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983).

Though Father was incarcerated for a significant portion of Child's life, this is not reason alone to warrant a finding of abandonment. *J.H. v. Cabinet for Hum. Res.*, 704 S.W.2d 661, 663 (Ky. App. 1985). The circuit court noted Father's incarceration; however, it listed several other reasons as a basis for its finding of abandonment. Those included the findings that: Father did not have any communication or contact with Child since at least 2021; Father did not seek any relationship or contact since January 2022; Father never filed any court actions to request custody or parenting time; and Father has "not participated in decisions, assisted with educational needs, provided any gifts, cards, letters, clothing, or other necessities, and has provided no essential parental care and protection even during times that he was not incarcerated." (R. at 364.)

---

[5] It also found KRS 199.502(1)(e) and (g) to have been established; however, those factors are not inclusive and only one factor need be proven to grant an adoption without consent. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019).

Although Father stated he had sent a text in August 2021 and some letters after he was incarcerated, he admitted to not sending any more communications for fear that his requests would be rejected, stating that Mother's objection in August 2021 was a significant reason for his relapse into substance use. (V.R. June 27, 2023 Hearing – 11:25:10.) Likewise, he admitted to not engaging with the courts to request parenting time or custody,[6] or consulting with an attorney about his options to do so. (V.R. June 27, 2023 Hearing – 11:30:15.) While Mother admitted to denying Father's request to see Child in August 2021 and receiving one of Father's letters (sent after the adoption proceeding commenced), the evidence does not demonstrate that she engaged in "deliberate and systematic ploys" to prevent Father from having time with Child, nor that Father's attempts were consistent. *See R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 428 (Ky. App. 2015). Additionally, by his own admission, Father has not provided any financial support, besides a small amount of court-ordered child support, nor has he provided any gifts, cards, or other necessities to Child. (V.R. June 27, 2023 Hearing – 12:04:45.)

It is clear from the evidence presented, including his own testimony, that Father manifested an intent to abandon Child. He chose to engage in criminal

---

[6] The one notable exception to his lack of engagement with the courts was the letter sent to the circuit court regarding the adoption proceedings in June 2023. (R. at 60.)

actions, abuse substances, and forgo treatment for his addiction, and he did so for multiple periods of time, even when he was not incarcerated or otherwise prohibited from seeing Child by the DVO. *See J.R.E.*, 667 S.W.3d at 594.

Thus, we hold there was sufficiently clear and convincing evidence that Father abandoned Child for a period of more than ninety (90) days, and, as it is "within the exclusive province of the trial court to weigh the evidence[,]" we do not disturb those findings. *R.P., Jr.*, 469 S.W.3d at 428. Father's actions in seeking treatment for his addiction issues and desire to now be a parent are commendable; however, his arguments and the evidence presented in his favor simply do not overcome the weight of the evidence presented that it would be in Child's best interests for the adoption to occur.

## IV.   CONCLUSION

In conclusion, we agree with Father's counsel and see no nonfrivolous issue which could be raised on appeal which would warrant reversal of the circuit court's judgment. Accordingly, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Melanie A. Rolley
Madisonville, Kentucky


SUPPLEMENTAL BRIEF FOR
APPELLANT:

J.M.B., *pro se*
Fredonia, Kentucky

BRIEF FOR APPELLEE R.W.D.:

Natasha Camenisch Little
Madisonville, Kentucky